UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JOSE TRINIDAD MARTINEZ SANTOYO,<br><br>Defendant. | No.  2:21–mj–125–KJN<br><br><u>ORDER DENYING BAIL</u><br><br>(ECF No. 12.) |

According to a provisional arrest request from the Government of Mexico, Vela Miranda was shot and killed outside of a pool hall in the state of Jalisco on December 21, 2013.  Three witnesses told Mexican authorities that they, Miranda, and defendant had been drinking in the pool hall and, after it closed, on the street outside.  Around 3:00 a.m., the witnesses stated defendant walked away from the group with Miranda, then told Miranda he was not a man, pointed a gun at him, and shot him.  Defendant was charged with Aggravated Intentional Homicide with Advantage, and an arrest warrant was issued on January 31, 2014.  (ECF No. 1.)

On August 9, 2021, the U.S. filed a complaint for provisional arrest with a view towards extradition.  (ECF No. 1.)  Defendant was arrested on May 12, 2022, and the U.S. filed its extradition request the next day.  (ECF No. 6.)  Defendant submitted to temporary detention and was ordered detained.  (ECF No. 7.)  Thereafter, defendant moved for release, the government opposed, and the court heard arguments at a June 10, 2022 hearing.  (ECF Nos. 12, 14, 15.)

1

**Parties' Arguments**

Defendant contends he should be released during the pendency of the extradition proceedings because he is neither a danger nor a flight risk. Defendant notes he has lived openly in Sutter, California since the early 1980s, is married, has children and grandchildren, worked as a welder for 33 years, and is now retired and receiving his social security benefits. In support of his motion, defendant submitted voting records, tax statements, vehicle registrations, social security statements, and letters from family, friends, and former co-workers. He notes he has no criminal history or issues with mental health or drugs, and willingly submitted to arrest. Defendant states his family members are willing to act as custodians and post a bond.

Defendant also contends case law requiring a showing of "special circumstances" for pre-extradition release violates his due process rights. Alternatively, he contends "special circumstances" exist due to: (1) Mexico's apparent lack of diplomatic urgency given the extensive delay between the issuance of the arrest warrant and these proceedings; (2) the aberrational nature of the allegations, comparing the circumstances of the crime with the abundant evidence showing him to be a "law-abiding man [who] carved out a simple life for himself, his wife, and his five children"; and (3) the "exceptional unlikelihood of flight or future non-appearance," given the same facts concerning his life and character. (ECF No. 12.)

The U.S. opposes release, arguing that because defendant is a fugitive charged with a crime in another country, he is by definition a flight risk. The U.S. also contends defendant is a danger to the community, as he has been charged with the violent killing of a man. (ECF No. 6.)

The U.S. also argues that binding and persuasive case law holds that "special circumstances" are part of a defendant's required showing if release is sought during the pendency of an extradition proceeding. Further, the U.S. contends defendant's asserted "special circumstances" are not special, as: (1) any delay in Mexico's processing of this case need not be explained, as the relevant delay under case law is between the time of a defendant's arrest and the conclusion of the extradition proceedings, which here is only a month; (2) cases finding "aberrational" allegations are dissimilar to defendant's case, both substantively and procedurally; and (3) low flight risk is, by law, not a special circumstance. (ECF No. 14.)

**Legal Standards**

There is a presumption against bail in an extradition case and only "special circumstances" will justify bail. Wright v. Henkel, 190 U.S. 40, 63 (1903); cf. also Matter of Requested Extradition of Kirby, 106 F.3d 855, 863-65 (9th Cir. 1996) (approving district court's finding of "special circumstances" to release a defendant during pendency of extradition); with Parretti v. U.S., 122 F.3d 758, 778-81 (9th Cir. 1997) (finding defendant's due process rights violated by "special circumstances" requirement, and pre-extradition detention unlawful in absence of flight risk or danger to the community), 143 F.3d 508 (9th Cir. 1998) (withdrawing opinion after defendant absconded while on pre-extradition release).

Examples of potential special circumstances include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process. Salerno v. U.S., 878 F.2d 317, 317 (9th Cir. 1989). However, circumstances applicable to all incarcerated defendants are not "special." See Matter of Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir. 1992) (accepting the requirement of special circumstances, "[t]he need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things.").

A person facing an extradition hearing has the burden of establishing, by a preponderance of the evidence, special circumstances warranting pre-extradition release. See Smyth, 976 F.2d 1535, 1535-36 (9th Cir. 1992); Kamrin v. United States, 725 F.2d 1225, 1228 (9th Cir. 1984); Matter of Extradition of Vladimir Blasko to the Slovak Republic, 2018 WL 3691859, at *5 (E.D. Cal. Aug. 1, 2018). Because an extradition proceeding is not a criminal case, the Bail Reform Act of 1984 does not govern, nor is its presumption in favor of bail applicable. Kamrin, 725 F.3d at 1227-28. Nevertheless, courts still consider a defendant's risk of flight and danger to the community or others, and often rely on case law relevant to the Bail Reform Act for support in these two inquiries. See Matter of Extradition of Nacif-Borge, 829 F. Supp. 1210, 1221 (D. Nev. 1993) (finding the evaluation of flight risk and danger to be "separate and independent consideration[s].").

**Analysis**

**A.     Flight Risk and Danger**

The undersigned starts with this observation: absent the "special circumstances" requirement of Wright and its progeny, the court would be potentially more inclined to release defendant during the pendency of his proceedings.[1] See 18 U.S.C § 3142(g). As concisely stated by defendant in his motion:

> On the date the U.S. Government filed its Complaint, Mr. Martinez was living in Sutter, California at his address on Palm Street. He and his wife Dominga have owned that home since 1990. Mr. Martinez had recently retired, and the Social Security Admin. has that address. Mr. Martinez has been a citizen of the United States since 1996, after becoming a legal resident in 1987. Although Mr. Martinez was born in Mexico, he has not lived there since 1981.
>
> For the pertinent time since the alleged crime, Mr. Martinez has worked consistently in the United States until the date of his retirement, and has paid taxes, always using the Palm Street address. His bank account is at that address.
>
> Mr. Martinez is registered to vote at the Palm Street address and has consistently voted since becoming a citizen. He is a member of the Operating Engineers Local Union, No. 3, AFL-CIO. He has an Amateur Radio license with the FCC at that address. Mr. Martinez has held a valid California Driver's License at that address since at least 1997. He had a valid license with the Palm Street address during all times. He has owned multiple cars registered to this address.
>
> Mr. Martinez's work history is set forth in his tax records and in the letters from former bosses and coworkers. Mr. Martinez worked for SWECO, a company in Sutter, California, from 1981 to 2014. He left SWECO and was a union welder, working for Rick Rossi until the date of his retirement. Mr. Martinez, at 65 years old, then retired and applied for Social Security benefits. He receives $2,167 a month in Social Security retirement benefits. Mr. Martinez has no passport.
>
> Mr. Martinez has been married to Dominga Jacinta Martinez since 1981. Ms. Martinez became a United States Citizen [in] 1998. They have been married 42 years. They are the parents of five United States citizen children, Victor, Alex, Erika, Noemi, and Fernando. Alex (36 years old), Fernando (26), and Noemi (30) live at the Palm Street address with their parents. Erica (32) lives in Utah. Victor (39) lives in Sutter, California, near his parents. Several of them

---

[1] The court believes conditions could be fashioned to ensure defendant's appearances at proceedings in this court, but the court would still have potential concerns that would need to be addressed given the nature of the crime with which defendant is charged.

>have their own families with children.
>
>Mr. Martinez has six brothers and four sisters: Mario Martinez of Yuba City, CA; Benjamin Martinez of Sutter, CA; Antonio Martinez of Sutter, CA; Maria Estella Rivera of Sutter, CA; Maria Ziegenmeyer of Sutter, CA; Elva Valdavinos of Yuba City; Eduvina Balnellos of Medford, Oregon; Jose Cruz Martinez of Sutter, CA; Eufamio Martinez of Medford, OR; and Lorenzo Martinez of Arkansas. Of his 9 grandchildren, 22 nieces, and 23 nephews, 33 of them live within a 15-minute drive of Mr. Martinez's house. As documented in the attached letters, Mr. Martinez's extended family, friends, coworkers, and community support his release.
>
>Other than a misdemeanor conviction for carrying a concealed weapon in 1998, for which he received probation, Mr. Martinez has no criminal history.

(See ECF No. 12 at 5-7, citations omitted).  The court notes defendant's wife and daughter, also apparent law-abiding U.S. Citizens with long-standing ties to the Sutter community, are willing to serve as third-party custodians.  Moreover, defendant's family is willing to post the family home as a bond, which they own unencumbered, and where multiple members of the family live together.  Zillow shows that the home is worth approximately $275,000.  (See Def's Exh. K.)  Thus, if the factors enumerated in Section 3142(g) were the sole factors applicable, the court might allow for defendant's release during the extradition proceedings.  See In re Extradition of Santos, 473 F. Supp. 2d 1030, 1040 (C.D. Cal. 2006) (evaluating the 3142(g) factors in considering release in an extradition bail proceeding).

### B.   Due Process and "Special Circumstances"

Defendant contends that if he can demonstrate he is not a flight risk or danger to the community or others, and that conditions of release can be fashioned that will assure his appearance at future hearings, the court's inquiry should end there.  Defendant cites the Due Process Clause of the Fifth Amendment to the United States Constitution, as well as case law indicating it is an open question whether an additional showing of "special circumstances" is required.  See U.S. Const. V ("No person . . . shall be deprived of life, liberty, or property, without due process of law."); In re Extradition of Blasko, 2019 U.S. Dist. LEXIS 21006, *23 (E.D. Cal. Feb. 8, 2019) (Boone, M.J.) (noting counsel's assertion of an open question).

Defendant relies primarily on Parretti v. United States, 122 F.3d 758 (1997), wherein a panel of the Ninth Circuit found the "special circumstances" requirement first announced in Wright v Henkel, 190 U.S. 40 (1903), violated the Due Process clause. 122 F.3d at 777-81 ("[D]etention without bail prior to the extradition hearing denied [defendant] due process of law even though [he] failed to make a showing of 'special circumstances' to the satisfaction of the district court."). However, this opinion was withdrawn, and the case was instead decided by the en banc panel on the fugitive disentitlement doctrine after defendant fled the country. Parretti v. U.S., 143 F.3d 508, 510 (9th Cir. 1998). As the U.S. notes, the Ninth Circuit has not reinstituted this holding in any other case, and so prior case law supporting the use a "special circumstances" inquiry remains in effect. See Kirby, 106 F.3d at 863-65 (approving district court's finding of "special circumstances" to release a defendant during pendency of extradition).

    In the absence of binding case law indicating otherwise, the undersigned is unpersuaded by defendant's arguments and reliance on Parretti. Instead, the undersigned concurs with those courts that have found the special circumstances requirement not to have violated the due process clause. See, e.g., Matter of Extradition of Antonowicz, 244 F. Supp. 3d 1066, 1069 (C.D. Cal. 2017) (collecting cases and noting an individual's liberty interest must be balanced by "the paramount interest of the United States in delivering an accused to a treaty partner seeking extradition . . .[a]s reflected in decades of federal court decisions, that balance is properly made in the special circumstances test"); citing Wright, 190 U.S. at 62 ("The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment."); Salerno, 481 U.S. at 750–51 (briefly discussing balance of rights in rejecting due process challenge to the Bail Reform Act of 1984); Nacif–Borge, 829 F.Supp.at 1214 ("[I]n foreign extradition cases, a presumption against bail exists due to the foreign relations interest of the United States in successfully returning persons subject to criminal prosecution to the requesting country."). As noted in Antonowicz, a rational basis exists for resolving bail in extradition cases differently than those charged with domestic crimes due to the U.S.'s foreign policy interests. 244 F. Supp. 3d at 1069. Thus, defendant's motion on this point is denied.

### C.  Special Circumstances

Having found a "special circumstances" inquiry still required by relevant case law, the undersigned turns to defendant's claims that special circumstances in fact exist warranting his release during his extradition proceedings.

**(1) Lack of diplomatic urgency and unusual delay**

Defendant first contends that that a special circumstance exists due to the length of time between the incident and the extradition request.  The relevant period is comprised of four segments, and only the last appears relevant to defendant's claims.

Based on the information relayed to the U.S., the victim was shot on December 21, 2013, and the warrant for defendant's arrest was issued on January 31, 2014.  Thus, from what the court knows at this moment, it only took the authorities just over a month to decide who to charge.  Now, it is unclear why it took the Mexican government over seven years to request provisional arrest, given defendant's living openly at the same address for decades.[2]  However, a close read of the persuasive authorities indicates that these segments are less relevant to defendant's assertions of delay than he might wish.  As persuasively stated in Matter of Extradition of Budrys, "[c]ourts generally consider delay a factor where the extradition hearing itself was significantly delayed or the defendant's liberty interests were greatly affected."  2019 WL 1958566, at *3 (N.D. Ill. May 2, 2019) (citing, e.g., Matter of Extradition of Morales, 906 F. Supp. at 1375 (finding special circumstances where Mexico failed to correct its extradition request in a timely manner, causing the defendant to languish in custody for seven months with no foreseeable end to the extradition proceedings)).  This analysis is inherent in the plain language from binding and persuasive cases in this Circuit.  See Salerno, 878 F.2d at 317 ("Examples of such circumstances include . . . unusual delay in the appeal process.") (emphasis added).

///

---

[2] Santoyo also questions why it took the U.S. an additional nine months to effectuate the arrest after the complaint was filed.  The U.S. filed a request to seal (ECF No. 17) a statement from an agent of the U.S. Marshal's Service, which the court will resolve in a separate order.  However, that filing has not been considered and had no bearing on the court's decision herein, given the scope of the authorities cited.

Illustrating this point, the court in Santos found special circumstances in an unusual delay of seven months between the time when defendant was arrested and the bail hearing. 473 F. Supp. 2d at 1036. However, critical to this finding was not just the delay, but the fact that the "arrest warrants serving as the basis for Mexico's extradition request [had] been under a cloud" due to the Mexican courts twice invalidating the underlying arrest warrants. Id. at 1036-37. These combined factors, plus the fact that open-ended, habeas-style proceedings were ongoing in the Mexican courts, indicated to the magistrate judge that it was highly likely the defendant would languish in pre-extradition detention while waiting for a finalized request. See id. Thus, because of these factors (plus a finding of low potential flight risk and danger), the court found special circumstances to release the defendant as his extradition proceedings moved forward. See id. Therefore, when considering delay, the most relevant segment of time appears to be from when defendant was arrested onward. Salerno, 878 F.2d at 317.

Defendant cites to other cases where courts have found the pre-arrest period relevant to a special circumstance. The most persuasive analysis comes from the 2018 Blasko proceedings, where District Judge Drozd found a number of delays by the Slovakian government in seeking extradition to be relevant to the "special circumstances" inquiry. 2018 WL 3691859. In that matter the charges concerned a 2007 event involving defendant, then a law enforcement officer in Slovakia, who was charged in 2008 with assault, who lived openly in the U.S. since 2010, and who was not arrested pursuant to the provisional request until 2017. See id. Defendant herein argues that, similar to Blasko, the passage of time between charging and request for provisional arrest indicates a lack of diplomatic urgency supporting a special circumstance. (ECF No. 12 at 11-12.) However, as the U.S. notes, the length of time between charge and arrest in Blasko was marred by other circumstances, including the fact that the defendant "continued to be employed as a police officer following the apparent return of the indictment against him in Slovakia," that he "was granted a valid Slovakian passport and permitted to leave the country," that he "was previously provisionally arrested and thereafter released from immigration custody in the United States prior to the extradition case that came before Judge Drozd." (ECF No. 14 at 6.) Thus, at

this time, the court sees fewer parallels between Blasko and this case than defendant would like.[3] Other cases cited by defendant finding delay are either similarly distinguishable or unpersuasive.

### (2) The aberrational nature of the allegations

Second, defendant argues the allegations against him are "so aberrational in nature in light of his demonstrated history of lawful stability," such that release is warranted.  Defendant cites to U.S. v Ramnath, 533 F. Supp. 2d 662, 682 (E.D. Tex. 2008), for support, but this case is unpersuasive at this point in defendant's case.

In Ramnath, the court found the "truly aberrational nature" of the allegations against the defendant could constitute special circumstances.  Setting aside the odd sua sponte references to "customary contingent of 'crackheads,' crazies, and miscreants who usually inhabit dank county jails" to find aberrational the charges against the defendant ("a mother with children" and "physician"), the court in Ramnath performed an extensive review of the evidence supporting probable cause in resolving this portion of the analysis, which appears key to its determination that defendant should be released pending the extradition hearing. 533 F. Supp. 2d at 679-80. Here, no such undertaking can be had—yet—as the formal extradition request is not due for another month.  Thus, the facts here are more akin to Blasko, where the court could not conclude the defendant had a high probability of success in prevailing because it was premature to do so. 2018 WL 3691859 at *7 (noting the need to investigate the underlying extradition motion).

### (3) The exceptional unlikelihood of flight or future non-appearance

Lastly, defendant contends he presents "zero risk of flight," which should be considered a "special circumstance" in and of itself.  (ECF No. 12 at 13-14.)  Defendant argues he "would have had numerous opportunities to flee, go 'underground,' or otherwise disappear, yet he, his wife, and family have remained in place at the address known to the Mexican and United States authorities." (Id.)  The court does not wholly agree with this assertion, as there is no indication defendant knew of the charges against him until his arrest in 2022.  (See ECF No. 1 at ¶ 10, filed under seal, indicating the U.S.'s understanding that defendant was unaware of the warrant.)

---

[3] To be sure, this analysis could change depending on the conduct of the Mexican government in processing Santoyo's case.

Setting that aside, however, it is not clear that low flight risk is a condition "special" to any particular defendant. See Salerno, 878 F.2d at 317-18 (noting that lack of flight risk "is not the criteria for release in an extradition case"). To the extent other district court cases have found lack of flight risk to be a highly-persuasive factor, the court finds these distinguishable and unpersuasive.

**Conclusion**

For the reasons stated above, the court finds no individual "special circumstances" supporting defendant's release during the pendency of his extradition proceedings at this time. Further, to the extent case law supports a "totality of the circumstances" approach, including folding the low risk of flight or low danger into the "special circumstances" analysis, the court finds the facts do not support release at this time. See, e.g., In re Wroclawski, 634 F. Supp. 2d 1003, 1006 (D. Ariz. 2009) (finding low flight risk, little danger to the community, decade of delay in processing the extradition request despite defendant's open living, and lack of probable cause in the extradition request). However, this denial comes with a word of caution: the court is acutely aware of the considerable pre-arrest delays in moving this case forward. These facts include the currently unexplained seven years between the issuance of the arrest warrant in Mexico and the request for extradition, as well as the nine months between when the U.S. received the request and when defendant was actually arrested. These delays do not give the undersigned full confidence that defendant's case will be processed in an expeditious manner.

Given that these proceedings are currently in the 60-day window allowed by treaty for Mexico to submit the formal request, and given that neither the court, defendant, nor apparently the U.S. have seen the evidence in support of defendant's extradition, it is premature to find delay. However, if in moving this case forward there continue to be delays, the undersigned will look more favorably on release during the pendency of the extradition proceedings. See, e.g., In re Extradition of Santos, 473 F. Supp. 2d 1030, 1043 (C.D. Cal. 2006) (finding special circumstances where it was impossible for the court to determine defendant's success on the merits of the extradition due to the unsupported allegations in the petition, where there was an unusual delay after arrest and likely more delays coming, and where defendant posed a low risk

of flight and no danger); In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 741(W.D. La. 1999) (finding special circumstance for bail where there was a strong showing the extradition lacked evidence supporting probable cause, as supported by a finding of no flight risk and no danger).

## **ORDER**

Accordingly, for all of the reasons set forth above, it is hereby ORDERED that defendant's motion for release (ECF No. 12) is DENIED.

Dated:  June 14, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

SD, sant.125